# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL No. 05-69-P-H |
| | ) | |
| JONATHAN POLAND, | ) | |
| | ) | |
| DEFENDANT | ) | |

## AMENDED DECISION AND ORDER ON GOVERNMENT'S MOTION FOR SENTENCE REDUCTION[1]

Pre-Booker cases consistently held that in granting a prosecutor's motion to reduce a prison sentence on account of the offender's substantial assistance to the government *after* sentencing, the federal sentencing judge could not enlarge the reduction for factors unrelated to the assistance.  All those cases, however, applied a Federal Rule of Criminal Procedure—Rule 35(b)—that explicitly required the reduction to "reflect" the substantial assistance or to be in "accord" with Sentencing Commission Guidelines and policy statements. As of December 1, 2007, all that language has disappeared from the Rule.  Now it reads simply that a "court may reduce a sentence *if* the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person" (emphasis added).  The Advisory Committee Note says that the Rule was changed in an effort to "conform[ ]" the Rule to the Supreme Court's decision in Booker; it reports that

---

[1] The amendment is to correct the date of entry of this order.  The actual date of entry is *(continued on next page)*

the drafters removed the previous language "because it treats the guidelines as mandatory[;]" and it quotes a portion of <u>Booker</u> that said that other factors contained in 18 U.S.C. § 3553(a) (factors that do not relate to substantial assistance) could affect the sentence as well.  I am unaware of any cases measuring the effect of the new language and Note.  I write this opinion to explain why I conclude that on a Rule 35(b) motion, a district judge still cannot enlarge the sentence reduction for factors unrelated to substantial assistance.  A different conclusion would place the new Rule beyond the authority conferred upon the rulemaking process under the Rules Enabling Act.[2]

## I.  FACTS AND PROCEDURAL HISTORY[3]

Less than four months different in age, the teenaged defendant and his cousin (their fathers are brothers) were good friends who spent time together.  On March 19, 2004, when the defendant was three months over age eighteen and his cousin was twenty-two days under, they constructed two homemade pipe bombs.  Having together stolen pipe nipples with end caps from a Home Depot, having together bought black powder from a gun shop, and the cousin having bought timed hobby fuse over the internet, they built the bombs, exploded the first in an open field, and then after 10 p.m., exploded the second in a soda machine outside a truck stop after it closed.  The cousin placed the second bomb and lit the fuse.

---

February 4, 2008, not February 5, 2008.

[2] I welcome an appeal for a more definitive ruling from the Circuit because, although I invited the parties' attention to the new Rule, the issue deserves more detailed briefing and argument.  For that reason, care should be exercised in assessing the impact of this decision on the impending sentence reduction proceedings in crack cocaine cases when the new crack cocaine guideline becomes retroactive March 3, 2008.  (In addition, although both proceedings require interpretation of 18 U.S.C. § 3582(c), they involve different subsections and text.)

[3] I take these facts from the trial transcript, the presentence report, and statements made by the
*(continued on next page)*

Fortunately, no one was injured, but the soda machine was destroyed. Suspicion settled on the defendant because he had tried to buy a large quantity of ammonium nitrate at a Farmers Union store. As a result of a consensual search and a confession, authorities had enough evidence to prosecute him federally on the charges of possession of an unregistered destructive device, 26 U.S.C. §§ 5861(d), and malicious damage or destruction of property by means of an explosive, 18 U.S.C. § 844(i). The defendant was arrested and bailed in April 2004, but not indicted until August 2005. Then he refused to cooperate and lied at a suppression hearing (as did his parents) to try to establish (unsuccessfully) that he did not confess voluntarily. A jury convicted him. The mandatory minimum sentence was five years. On December 15, 2006, I sentenced him at the bottom of the Guidelines range, sixty-three months. In considering the § 3553(a) factors, I concluded that the extra three months were necessary to reflect an appropriate small additional penalty for obstructing justice by lying. I remanded him immediately to custody.

Federal authorities did not have enough evidence to convict the cousin without the defendant's testimony. Once the defendant had been convicted, the government filed a juvenile information against the cousin (although he was by then just days shy of his twenty-first birthday, at which time he could have been prosecuted as an adult[4]), and obtained a court order compelling the defendant to

---

government in its letter in support of the Rule 35(b) motion and at the motion hearing.

[4] The Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq., does not apply to a defendant who is alleged to have committed a crime before his eighteenth birthday but is not prosecuted until after he turns twenty-one, unless the defendant can show that the government improperly delayed prosecution in order to gain a tactical advantage. See United States v. Jimenez, 256 F.3d 330, 345 n.19 (5th Cir. 2001) (listing cases); United States v. Hoo, 825 F.2d 667, 669-70 (2d Cir. 1987). *(continued on next page)*

testify against him.  With a new lawyer, the defendant decided to cooperate.  He agreed to withdraw his appeal of his conviction, his sentence, and the denial of his suppression motion; and he made a proffer.  Because of the defendant's proffer, his cousin consented to disposition as a juvenile delinquent (the equivalent of a guilty plea), resulting in a serious rift in the extended family of the two young men.  A different judge for a variety of reasons (including the limitations imposed by juvenile proceedings) sentenced the cousin to a drastically shorter period of confinement.

Now the government has moved under Rule 35(b) to reduce the defendant's sentence below both the statutory minimum and the Guidelines range.  Initially, the government said in a written submission that I should reduce his sentence to forty-eight months considering his substantial assistance alone.  The government explained that even with the twenty-five percent reduction it recommended, the defendant's sentence of forty-eight months would still be sixteen times longer than the sentence his cousin received.  Then at the hearing, the prosecutor agreed that under the new Rule language, it would be appropriate to consider other factors, particularly sentencing disparity.  The defendant requested that I consider all the § 3553(a) factors and grant him a substantially lower (but unspecified) sentence.  In a written memorandum filed after the hearing, the government's position has become more opaque.[5]

---

Here, there is no indication that the government delayed improperly.  When the government filed the juvenile information, the defendant in this case had not yet agreed to cooperate against his cousin, and the government had not yet obtained a compulsion order compelling the defendant to testify against his cousin.  In fact, the defendant did not proffer until several months after his cousin turned twenty-one.

[5] It says: "Thus, while the Court may consider 3553(a) factors in reducing Defendant's sentence, it *(continued on next page)*

4

## II. ANALYSIS

I start with some history.

### A. Rule 35(b) Pre-Booker

Before the Sentencing Reform Act of 1984 created the Sentencing Commission and directed the writing of the Guidelines, Rule 35 gave district judges wide discretion to reduce a previously imposed sentence, provided that they acted within certain time limits.[6]  According to the First Circuit, a Rule 35 motion was a "plea for leniency" and was "committed to the informed discretion of the trial court."  United States v. Distasio, 820 F.2d 20, 24 (1st Cir. 1987).

### (1) Rule 35 as Amended by the Sentencing Reform Act of 1984

But with the Sentencing Reform Act and its new and strict limitations on federal judges' discretion in *imposing* sentences, Congress also introduced new limits on federal judges' authority to *reduce* a sentence previously imposed.  Under

---

is the government's position that it may do so only in determining to what extent to reduce the sentence based on Defendant's cooperation."  Gov't Mem. Regarding Mot. for Sentence Reduction at 2 (Docket Item 154).  On their face, the § 3553(a) factors do not seem to relate to cooperation.  But the language is similar to what § 3582(c)(2) contains for considering reduced sentences in the case of a Guidelines amendment:  "[T]he court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable . . . ."  The same language appears in § 3582(c)(1)(A), authorizing reductions based upon Bureau of Prisons motions.  Perhaps the government means to say that I can use the § 3553(a) factors in deciding not to reduce or to reduce by a smaller amount, but that I cannot use them to increase a reduction.  That would be similar to the earlier caselaw mentioned in note 10 infra (it is how I ultimately interpret the Rule language).

[6] Before the Sentencing Reform Act amendments took effect, Rule 35(b) provided:

> A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation.  The court shall determine the motion within a reasonable time.  Changing a sentence from incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

*(continued on next page)*

subchapter D, captioned "Imprisonment", Congress adopted what is now 18 U.S.C. § 3582, a section that distinguishes between imposing a term of imprisonment (subsection (a)), and modifying a term of imprisonment previously imposed (subsection (c)).

In subsection (c), Congress recognized three basic categories of modification (reduction) for sentences previously imposed.[7]  One category is reduction on motion by the Bureau of Prisons, seeking a prisoner's early release, generally on account of age and/or severe illness.  18 U.S.C. § 3582(c)(1)(A).  Another category is reduction because later Guidelines amendments have reduced the applicable sentencing range for an already sentenced offender.  18 U.S.C. § 3582(c)(2).  For both these categories, Congress specified that the reductions must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A), (c)(2).  Third, as relevant to this case:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
> . . .
>         (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute[8] or by Rule 35 of the Federal Rules of Criminal Procedure . . . .

Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, § 212(a)(2), 98 Stat. 1837 (1984), codified at 18 U.S.C. § 3582(c).  When it enacted this provision,

---

Fed. R. Crim. P. 35(b) (1987) (repealed 1984 as to crimes committed after Nov. 1, 1987).

[7] The Senate Committee Report calls them three "safety valves."  S. Rep. No. 98-225, at 121 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3304.

[8] An example of such a statute is 18 U.S.C. § 3559(c)(7), discussed in United States v. McClain, No. 05-16015, 2006 WL 1785337 (11th Cir. June 29, 2006) (unpublished opinion).  That statute authorizes resentencing in certain situations where a prior conviction produced a heightened sentence but that prior conviction later was overturned because it was unconstitutional or the *(continued on next page)*

Congress simultaneously rewrote Rule 35 of the Federal Rules of Criminal Procedure to contain an express provision concerning the extent of the permitted modification and the Sentencing Commission's role.  Rule 35(b) as rewritten by Congress took effect in 1987.  It provided:

> The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

Sentencing Reform Act of 1984, Title II, § 212(b), as amended by Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, Title X, § 1009, 100 Stat. 3207 (1986).[9]

The language of § 3582(c), along with congressionally-written Rule 35(b), shows that Congress expected the Commission to write a Guideline or policy statement for all three post-sentence reduction categories.  In fact, Congress

---

defendant was pardoned for innocence of that crime.

[9] The language Congress originally adopted for Rule 35(b) in 1984 was slightly different.  It provided:

> The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, to the extent that such assistance is a factor in applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

Sentencing Reform Act of 1984, Title II, § 212(b).  But before the new Rule 35(b) took effect in 1987, Congress changed the text by replacing the language after the final comma.  At the same time, Congress adopted 18 U.S.C. § 3553(e), the provision authorizing a court, upon government motion, to reduce a sentence below a statutory minimum at the initial imposition of sentence.  See Anti-Drug Abuse Act of 1986, Title X, § 1007.  The addition of the final sentence in Rule 35(b) provides parallel authority *after* sentencing.

In the same legislation, Congress also directed the Commission to write a policy statement for granting downward departures based upon substantial assistance at the time of sentence imposition.  See Anti-Drug Abuse Act of 1986, Title X, § 1008, codified at 28 U.S.C. § 994(n).  The Commission drafted § 5K1.1 as a result.

7

specifically directed the Commission to promulgate general policy statements for "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C).  Nowhere is there a suggestion that these "sentence modification provisions" are the same as initial sentence imposition and that Congress contemplated an entirely new resentencing with full reconsideration of everything involved.[10]

### (2)  Implementation of Rule 35(b) as amended by the Sentencing Reform Act

In response to the statute, the Commission has written a policy statement for Bureau of Prisons motions, USSG § 1B1.13; it has written a policy statement for Guidelines amendments that reduce the sentencing range, USSG § 1B1.10; it has even written a policy statement that governs substantial assistance rendered before the judge initially *imposes* a sentence, USSG § 5K1.1.  But despite the congressional directive, the Commission has never written a policy statement specifically for Rule 35(b)/§ 3582(c)(1)(B) substantial assistance motions to *reduce* a sentence *previously* imposed.

Nevertheless, courts confronted with Rule 35(b) motions under the Guidelines sentencing regime soon decided that although judges could consider a variety of factors in refusing to reduce a sentence or in refusing to reduce it as much as the substantial assistance alone might have justified,[11] they could

---

[10] Cf. United States v. McAndrews, 12 F.3d 273, 277 (1st Cir. 1993) ("By definition, a sentence must already have been imposed before Rule 35(b) can be invoked and a sentence reduction contemplated. It follows that the appealability of an order resolving a Rule 35(b) motion is not controlled by 18 U.S.C. § 3742 because such an order is not, properly speaking, a sentence."). See also Fed. R. Crim. P. 43(a)(3), (a)(4) (the defendant's presence is required at the original sentencing but not at a Rule 35 proceeding); Advisory Committee's Note, 1998 Amendments (distinguishing between a resentencing on remand and a sentence reduction proceeding).

[11] See, e.g., United States v. Neary, 183 F.3d 1196, 197-98 (10th Cir. 1999); United States v. *(continued on next page)*

8

consider *only* substantial assistance (and not other factors) in support of a reduction.  There were two reasons.  First, the statute and the Rule said that the reduction must "reflect" the "subsequent, substantial assistance," United States v. Chavarria-Herrara, 15 F.3d 1033, 1037 (11th Cir. 1994) ("The plain language of Rule 35(b) indicates that the reduction shall reflect the assistance of the defendant; it does not mention any other factor that may be considered."); United States v. Garcia, 215 Fed. App'x. 948 (11th Cir. 2007) (same); United States v. Manella, 86 F.3d 201 (11th Cir. 1996) (same).  Second, courts began to treat § 5K1.1 (for reductions at the time of initial sentence imposition) as pertinent to Rule 35(b) post-sentence reductions, and the § 5K1.1 decisions routinely held that *only* factors related to substantial assistance could be considered in supporting a downward reduction.  See, e.g., United States v. Chestna, 962 F.2d 103, 106-07 (1st Cir. 1992).[12]  The courts therefore applied that same limitation to Rule 35(b) reductions.  See, e.g., United States v. Woodward, 245 Fed. App'x 320 (4th Cir.

---

Manella, 86 F.3d 201, 204-05 (11th Cir. 1996).  This asymmetry results from the fact that the Rule says the court "may" (not must) reduce the sentence for substantial assistance, combined with the absence of any language "in the text of the rule [that] purports to limit what factors may militate against granting a Rule 35(b) reduction."  Manella, 86 F.3d at 204-05.  See also United States v. Woodward, No. 07-4125, 2007 WL 2404444 (4th Cir. Aug. 23, 2007); United States v. Doe, 351 F.3d 929 (9th Cir. 2003).

[12] The courts have applied the same reasoning to government motions to go below a statutory minimum sentence at the time of imposing sentence under the authority of § 3553(e).  Subsection (e) states:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e).  Once again, the statutory command that the reduction below the statutory minimum must "reflect" the substantial assistance has driven the interpretation.  See United States v. Ahlers, 305 F.3d 54, 60 (1st Cir. 2002).  In addition, for § 3553(e) motions, § 5K1.1 *(continued on next page)*

9

2007) (citing a § 5K1.1 decision); <u>Garcia</u>, 215 Fed. App'x. at 950 (same); <u>United States v. Momoh</u>, No. 95-1674, 1996 WL 289988, *2 (2d Cir. May 31, 1996) (unpublished opinion) (citing § 5K1.1 directly); <u>United States v. Doe</u>, 940 F.2d 199, 203 n.7 (7th Cir. 1991) (same).[13]   Indeed, the First Circuit has called the two provisions "birds of a feather." <u>United States v. Alegria</u>, 192 F.3d 179, 184 (1st Cir. 1999).  Practically speaking, then, § 5K1.1 and its listing of factors became the de facto policy statement for Rule 35(b).[14]   <u>See</u> <u>United States v. Marks</u>, 244 F.3d 971, 973 n.1 (8th Cir. 2001) (listing cases).

In 2002, the Rules drafters amended Rule 35(b) "as part of the general restyling of the Criminal Rules . . . .  These changes [were] intended to be stylistic only[.]" Fed. R. Crim. P. 35 Advisory Committee's Note, 2002 Amendments.  They removed the "reflect" language and modified slightly the reference to the

---

explicitly applies.  <u>See</u> USSG § 5K1.1, comment. (n.1).

[13] There was some early, more careful language.  <u>See</u>, <u>e.g.</u>, <u>United States v. Gangi</u>, 45 F.3d 28, 31 (2d Cir. 1995) ("We are persuaded that, due to similarity of language and function, § 5K1.1 should inform our construction of Rule 35(b)."); <u>United States v. Perez</u>, 955 F.2d 34, 35 (10th Cir. 1992) ("Because of their overlapping subject matter and similarities in language, it is instructive to examine and compare U.S.S.G. § 5K1.1 (policy statement) and 18 U.S.C. § 3553(e) (1988) when interpreting Rule 35(b).").

[14] Textually, it is apparent that § 5K1.1 is *not* a policy statement for Rule 35(b) motions.  The Commission has been explicit when it issues policy statements that apply to post-sentence reductions.  <u>See</u>, <u>e.g.</u>, USSG § 1B1.10 (reducing previously imposed sentences because of a retroactive Guideline change), USSG § 1B1.13 (reducing a previously imposed sentence because of a Bureau of Prisons motion).  Section 5K1.1, on the other hand, contains no reference to post-sentence reductions and appears in a section of the Guidelines—Chapter 5, Part K—that otherwise contains provisions that can apply only at the time of initial sentence imposition. The Commentary to § 5K1.1 refers to 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), both of which are concerned with sentence imposition.  It makes no reference to § 3582(c) or Rule 35(b).  And there is, of course, at least one significant difference between the two:  § 5K1.1 is concerned with the timeliness of a decision to assist.  By definition, Rule 35(b) can apply only when substantial assistance is late— <u>i.e.</u>, *after* sentencing, and then generally only within the first year.  The timeliness factor of § 5K1.1 thus is a poor fit for the one-year window of Rule 35(b).  It is perhaps not surprising that generating a policy statement for Rule 35(b) has not been a high priority.  Rule 35(b) motions represent a very small proportion of sentencing events.  <u>See</u> Linda Drazga Maxfield & John H. Kramer, <u>Substantial Assistance: An Empirical Yardstick Gauging Equity in Current Federal Policy and Practice</u>, 5 n.11 (January 1998) <u>available at</u> <u>http://www.ussc.gov/</u> (as of 10 years ago, about 500 Rule 35(b) reductions occurred per year compared with about 7,500 § 5K1.1 departures).  And *(continued on next page)*

Sentencing Commission.  The Rule, as amended, required that "reducing the sentence accord[ ] with the Sentencing Commission's Guidelines and policy statements." Fed. R. Crim. P. 35(b)(1)(B) (effective Dec. 1, 2002).  But the cases interpreting the Rule did not change; they continued to refer to the Commission's § 5K1.1 factors and to limit district judges to considering only those assistance-related factors.  See, e.g., Woodward, 245 Fed App'x at 323; Garcia, 215 Fed. Appx. at 950-51.

### B.  Rule 35(b) Post-<u>Booker</u>

The January 2005 Supreme Court decision in Booker was a watershed for Federal Guidelines sentencing.  Booker ruled that the Sixth Amendment right to jury trial prevents judicially-found facts (except the existence of previous convictions) from mandating a higher sentence.  United States v. Booker, 543 U.S. 220, 226-27, 245 (2005).  As a result of Booker, Federal Sentencing Guidelines that had been mandatory became advisory.  Id. at 245. Rule 35(b)(1) proceedings, however, did not change.  Courts continued to insist that only substantial assistance factors could support a post-sentence reduction on a Rule 35(b) motion, and that § 3553(a) factors could not enhance the reduction.  United States v. White No. 06-15155, 2007 WL 3047253 (11th Cir. Oct. 19, 2007); United States v. Budd, 208 Fed. App'x. 271, 272 (4th Cir. 2006).

---

the § 5K1.1 factors do give general guidance.

### (1)  The Rules Committee's Response to __Booker__

Nevertheless, after __Booker,__ the Advisory Committee on Criminal Rules began to debate the decision's effect on Rule 35(b).[15]  I have already described the Rules drafters' previous elimination of the "reflect" requirement that they described as a purely stylistic change.  Effective December 1, 2007, they also deleted entirely the language in Rule 35(b) that referred to the Sentencing Commission, its Guidelines or policy statements.  Now, that portion of Rule 35(b) says only:

> Upon the government's motion made within one year of sentencing, the court may reduce a sentence *if* the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

Fed. R. Crim. P. 35(b)(1) (effective Dec. 1, 2007) (emphasis added).

To recapitulate, in § 3582(c) Congress authorized very limited circumstances in which a court could modify a term of imprisonment, including "to the extent otherwise expressly permitted by . . . Rule 35(b)."  But the criteria that Congress originally wrote into Rule 35(b) to guide the authorized § 3582(c) modification have disappeared as a result of successive Rules amendments:  first, deletion of the "reflect" language in a stylistic change; then, deletion of all reference to the Sentencing Commission's role.

According to the Advisory Committee Note accompanying the 2007 Amendment, the Advisory Committee believed that the Supreme Court's decision in __Booker__ required the most recent change:  "The amendment conforms Rule 35(b)(1) to the Supreme Court's decision in United States v. Booker . . . .  Subdivision (b)(1)(B) has been deleted because it treats the guidelines as

mandatory." Fed. R. Crim. P. 35(b) Advisory Committee's Note, 2007 Amendments. And the Advisory Committee apparently believed that a judge confronted with a Rule 35(b) motion to reduce a sentence may now consider the entire range of original sentencing factors under <u>Booker</u>: it explains, with a quotation from <u>Booker</u>, that with § 3553(b)(1) "severed and excised," the Sentencing Reform Act "permits the court to tailor the sentence in light of other statutory concerns as well [as the Guidelines], see § 3553(a)."[16] Because the Judicial Conference and the Supreme Court both approved the amendment and Congress did not intervene, the new version of Rule 35(b) is now effective.

What then is the effect of the new language? As amended, Rule 35(b)(1) permits a post-sentence reduction *if* the government so moves and *if* there is substantial assistance.[17] But the Rule no longer requires that any reduction "reflect" the substantial assistance or "accord" with Sentencing Commission policies or Guidelines. In other words, once the two conditions are satisfied (a government motion; and substantial assistance in investigating and prosecuting

---

[15] In an Appendix, I summarize the rulemaking process that ensued.

[16] The Note states in full:

> The amendment conforms Rule 35(b)(1) to the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005). In <u>Booker</u> the Court held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)." <u>Id</u>. at 245-46. Subdivision (b)(1)(B) has been deleted because it treats the guidelines as mandatory.

Fed. R. Crim. P. 35(b) Advisory Committee's Note, 2007 amendment.

[17] Rule 35(b)(4) still permits a court to go below a statutory minimum sentence on such a motion.

another person), the Rule has no express criteria either in its text, or through delegation to the Commission, for assessing the extent of any sentence reduction. The question is whether the rulemaking process *could* rewrite the Rule in this fashion.

### (2) *Booker's Applicability to Rule 35(b) Proceedings*

Obviously, the Advisory Committee could rewrite the Rule if the Constitution, as interpreted by the Supreme Court in <u>Booker</u>, made the previous Rule language unconstitutional.  In that event, the rulemaking process simply excised the unconstitutional part of the previous Rule.

Certainly there are statements in <u>Booker</u> that could lead a reader to conclude that every mandatory feature of the Guidelines has been thrown out.[18] But it is important to read <u>Booker</u>'s statements carefully, in light of the issue the Supreme Court was deciding there.  The Court was deciding whether a federal judge *must increase* the sentence to be imposed after a trial or a guilty plea, by taking into account facts that the jury had not found and that the defendant had not conceded.  The Court was not dealing with (<u>Booker</u> does not even discuss)

---

[18] In the <u>Booker</u> remedial opinion, the Court stated that given the Court's constitutional holding, a mandatory Guidelines system "is not a choice that remains open." <u>Booker</u>, 543 U.S. at 265.  It also rejected the government's suggestion that the Guidelines system could be advisory when "the Guidelines would require the sentencing court to find a sentence-enhancing fact" but mandatory in all other cases—those in which the Constitution did not prohibit judicial factfinding. <u>Booker</u>, 543 U.S. at 265-66.  The Court explained that it did

> not see how it is possible to leave the Guidelines as binding in [these] other cases.  For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to <u>reduce</u> sentences, but it would not impose those limits upon a judge's ability to <u>increase</u> sentences.  We do not believe that such 'one-way lever[s]' are compatible with Congress' intent.  For another, we believe that Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others, given the administrative complexities that such a system would create.

*(continued on next page)*

what the Sixth Amendment requires when the prosecutor asks a court to reduce an *unchallenged* sentence that was previously imposed on a convicted offender.  It is hard to see what relevance the Sixth Amendment has in that context.  Such sentence reductions after sentencing have never been the stuff of jury trials.[19]

What <u>Booker</u> did was to excise as unconstitutional *two very specific provisions* of the statute:[20]  one dealing with appellate review (I will not discuss it, as it is not pertinent to this case) and § 3553(b)(1), a provision that made the Guidelines mandatory when imposing a sentence.   Section 3553(b)(1) (the provision the Advisory Committee cited in the Note accompanying the recent amendment to Rule 35(b)), however, deals only with initial *imposition* of sentence, not with reduction of a previously imposed sentence.[21]  The separate topic of later

---

<u>Id</u>. at 266 (internal citations omitted).

[19] The Ninth Circuit, in <u>United States v. Hicks</u>, held that <u>Booker</u> applies when a district court resentences a defendant pursuant to § 3582(c)(2), which authorizes a sentence reduction for a defendant who was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered retroactively by the Sentencing Commission.  472 F.3d 1167 (9th Cir. 2007).  Under the Ninth Circuit's reasoning, the judge lowering the initial sentence on account of the Guidelines amendment may reduce the sentence even farther by considering the § 3553(a) factors.  <u>Id</u>. at 1170.  The Fourth Circuit disagrees.  <u>See</u> <u>United States v. Hudson</u>, 242 Fed. App'x. 16 (4th Cir. 2007).  (In a different context, the Eleventh Circuit has said that "<u>Booker</u> is inapplicable to § 3582(c)(2) motions."  <u>United States v. Moreno</u>, 421 F.3d 1217, 1220 (11th Cir. 2005).  The Third Circuit has said that "section 3582(c)(2) does not entitle a defendant to a full de novo resentencing."  <u>United States v. Swint</u>, No. 07-1719, 2007 WL 2745767, at *2 n.1 (3d Cir. Sept. 21, 2007).)  It will be time enough to decide that issue in this District when the crack cocaine Guidelines reduction becomes effective March 3, 2008.  I am satisfied that the <u>Hicks</u> argument, whatever its validity, does not include Rule 35(b) motions, <u>see</u> <u>White</u>, 2007 WL 3047253, at *1.
[20] "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1) (Supp. IV), incompatible with today's constitutional holding.  We conclude that this provision must be severed and excised, as must one other statutory section, § 3742(e) (2000 ed. and Supp. IV), which depends upon the Guidelines' mandatory nature."  <u>Booker</u>, 543 U.S. at 245; <u>id</u>. at 246 ("severance and excision of two provisions"); <u>id</u>. at 259 ("[W]e must sever and excise two specific statutory provisions.").
[21] Section 3553(b)(1) provides:

> Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

*(continued on next page)*

sentence *reduction* is treated in § 3582(c), dealing with post-sentence motions from the Bureau of Prisons, substantial cooperation motions under Rule 35(b), and post-sentence reductions when the Commission lowers a Guidelines range (as it did with the recent crack cocaine amendment). In <u>Booker</u>, the Supreme Court said nothing about § 3582(c) or Rule 35. Moreover, the Court was careful to note that it "must 'refrain from invalidating more of the statute than is necessary,'" and "must retain those portions of the Act that are (1) constitutionally valid, (2) capable of 'functioning independently,' and (3) consistent with Congress' basic objectives in enacting the statute." <u>Booker</u>, 543 U.S. at 258-59 (internal citations omitted).

I conclude that the post-sentence structure created by § 3582(c)(1)(B) together with the previous language of Rule 35(b) meets those three criteria. It is constitutionally valid (it offends nothing in the Sixth Amendment or <u>Booker</u>); it is capable of functioning independently of the (previously mandatory) Guidelines governing sentence imposition; and it is consistent with Congress' basic objectives in enacting the Sentencing Reform Act. In 1984 Congress severely limited judges' previous Rule 35 discretion to reduce an already imposed sentence, and certainly did so in part because it did not want general sentencing discretion to creep back in through the back door post-sentence. At the same time, Congress articulated a clear standard for post-sentence reductions, a standard that can function independently of the rest of the Guidelines structure and that is consistent with Congress' basic objective. The standard was that a post-sentence reduction must

---

18 U.S.C. § 3553(b)(1).

"reflect" the "subsequent, substantial assistance" that the offender provided. That standard serves the legitimate purposes of encouraging later substantial assistance from an offender without intruding unduly on sentencing finality[22] and of avoiding additional complexity by foreclosing a re-evaluation of all sentencing issues under § 3553(a) whenever a Rule 35(b) motion is filed.[23] Through the Rule language and through 28 U.S.C. § 994(a)(2)(C), Congress asked the Commission to elaborate on the "reflect" standard through Guidelines and policy statements.[24] I see nothing in Booker to invalidate such a role for the Commission; instead, such a delegation was upheld in the Supreme Court's earlier Mistretta decision. See Mistretta v. United States, 488 U.S. 361, 412 (1989). Thus, even though Booker has restored some discretion to the judge initially imposing the sentence, this post-sentence part of the statute, which limits a reduction so as to reflect the defendant's substantial assistance, has no Sixth Amendment ramification, and can function independently of those statutory provisions that do implicate the Sixth Amendment.[25]

---

[22] The First Circuit has reflected on the importance of finality in the context of a retroactive Guidelines amendment. In United States v. Jordan, refusing to countenance reopening sentencing issues beyond the effect of the Guidelines amendment, it referred to "the strong interest in the finality of criminal judgments, a powerful policy interest expressed in many forms in the criminal law" and referred to 28 U.S.C. § 991(b)(1)(B)'s reference to "certainty" as well as "fairness" in sentencing. 162 F.3d 1, 5 (1st Cir. 1998). Uncertainty about a sentence was one of the factors that motivated the Sentencing Reform Act of 1984. Booker, 543 U.S. at 264; Mistretta v. United States, 488 U.S. 361, 366, 374 (1989).

[23] At least two decisions post-Booker, but before the December 2007 amendment to Rule 35, ruled that a Rule 35(b) motion is narrow: it does not challenge the finality of the original sentence such that the defendant might invoke Booker, Budd, 208 Fed. App'x. at 272; and it is not a resentencing that permits correction of earlier errors. White, 2007 WL 3047253, at *1.

[24] One member of the Advisory Committee on Criminal Rules resisted the necessity for any Rule 35(b) change on the basis that there is no Commission Guideline or policy statement for Rule 35(b). The Rule change went forward nevertheless, apparently on the fear that the Commission might create a binding standard in the future, and that the Rule would then run afoul of Booker. See Appendix.

[25] It is not like the "one-way lever[s]" at initial sentence imposition that concerned the Court in *(continued on next page)*

Finally, even if Booker did destroy all mandatory features of the Guidelines, even for this post-sentence relief, then the Committee's 2007 amendment, perhaps unintentionally, has turned the earlier 2002 "stylistic" amendment (removing "reflect") into a substantive change, a change that I will discuss below under the Rules Enabling Act.  With removal of even Commission standards from the Rule (operating now by analogy under § 5K1.1), "reflect" has become only "if."

### *Reading the amendment in light of the Rules Enabling Act*

If I am correct that Booker does not support the December 2007 change in Rule 35(b), and if the new Advisory Committee Note, taken at face value, means that a judge can now consider all the § 3553(a) factors in deciding how far to reduce a sentence on a Rule 35(b) motion, can the new Rule nevertheless be effective because of the independent authority of the rulemaking process?  The answer to that question depends upon the scope of rulemaking authority under the Rules Enabling Act, 28 U.S.C. § 2072.

The Rules Enabling Act allows the Supreme Court, following certain prescribed steps, "to prescribe general rules of practice and procedure . . . for cases in the United States district courts."  28 US.C. § 2072(a).  A duly adopted rule that satisfies the Rules Enabling Act supplants a pre-existing statute, and thus would supplant the congressionally-adopted Rule 35(b).[26]  But the statute also provides that "[s]uch rules shall not abridge, enlarge or modify any

---

Booker, 543 U.S. at 266, by which the Guidelines would control reductions but not increases in calculating the original sentence.  A Rule 35(b) proceeding has always dealt solely with reductions. Applying Booker's standard for the remedial question (What result adheres most closely to Congress' original objective? Id. at 263), I conclude that the statutorily-assigned role for the Commission remains.

[26] "All laws in conflict with such rules shall be of no further force or effect after such rules have *(continued on next page)*

substantive right." 28 U.S.C. § 2072(b).  According to Supreme Court cases that every law student reads in first year Civil Procedure,[27] "[t]he test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941), discussed in Mistretta, 488 U.S. at 386-88; Hanna v. Plumer, 380 U.S. 460 (1965).[28]  Is removing the Sentencing Commission's role altogether in Rule 35(b) motions a matter of procedure?  Hardly.  Instead, it moves control of the factors to be considered from the Commission to the courts.  According to Booker, Mistretta "was premised on the understanding that the Commission . . . makes political and substantive decisions." 543 U.S. at 242.[29]  And the combined effect of replacing "reflect" with "if," along with eliminating the Commission's role, amounts to changing—indeed removing—the standard for the amount or degree of post-sentence reduction.  That is substantive, not procedural, under any definition of those terms.

_____

taken effect." 28 U.S.C. § 2072(b); see Davis v. United States, 411 U.S. 233, 241-42 (1973).

[27] In 1988, Congress unified the criminal and civil rule-making authority under 28 U.S.C. §§ 2071-2077.  Before this consolidation, the Supreme Court's authority to prescribe rules of criminal practice and procedure was governed by 18 U.S.C. §§ 3771 (process prior to a verdict or guilty plea) and 3772 (post verdict process) (repealed Pub. L. No. 100-702, Title IV, § 404(a)(1), Nov. 19, 1988, 102 Stat. 4642, 4651).

[28] The same analysis applies to Rules of Criminal Procedure.  See United States v. Walsh, 75 F.3d 1, 6 (1st Cir. 1996).

[29] In upholding the delegation of authority to the Sentencing Commission in Mistretta, the Supreme Court was "loath to enter the logical morass of distinguishing between substantive and procedural rules," but "recognize[d] that the task of promulgating rules regulating practice and pleading before federal courts does not involve the degree of political judgment integral to the Commission's formulation of sentencing guidelines." Mistretta, 488 U.S. at 392.  The Court pointed out that the Commission must make judgments about things like the circumstances of the offense, community views of its gravity, and deterrence.  Id. at n.18. "[T]he degree of political judgment about crime and criminality exercised by the Commission and the scope of the substantive effects of its work does to some extent set its rulemaking powers apart from prior judicial rulemaking." Id. at 392-93.

I hesitate to reach a conclusion that the Rules drafters exceeded their authority. After all, the treatise writers tell us that the Supreme Court has never invalidated a rule as contrary to the Rules Enabling Act, and that when the question is close, courts typically interpret a rule so as to avoid the issue. 1 James Wm. Moore et al., Moore's Federal Practice § 1.05[2][a] (3d ed. 2006); see also Sara Sun Beale, Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts, 84 Colum. L. Rev. 1433, 1477 (1984). So first I determine whether I can reasonably interpret the new Rule language to avoid the problem.

The new text of the Rule itself provides no express standard for granting a reduction once the court concludes that a sentenced offender has given substantial assistance. The text now tells the judge only *if* the reduction can take place. As the Appendix shows, the Reporter to the Advisory Committee suggested including a statement in the Note that the Committee intended no change in the standard. Unfortunately, her suggestion was not adopted. Nevertheless, it is only the Advisory Committee Note that suggests that the drafters expected judges to consider the § 3553(a) factors on such a motion, factors that include sentencing disparity, the need to provide restitution, etc.

"But the Advisory Committee Note is not the law; the rule is." United States v. Carey, 120 F.3d 509, 512 (4th Cir. 1997). Appellate caselaw interpreted the previous text to allow only assistance-related factors to support the extent of a reduction even in the absence of binding Commission Guidelines or policy statements. The new text does not require me to ignore that caselaw. Indeed, it

appears likely that, in its haste to remove binding Sentencing Commission authority, the Committee did not consider the effect of its previous "stylistic" amendment that removed the word "reflect."

I interpret the new Rule 35(b), therefore, to limit the judge, as before the amendment, to consider only substantial assistance factors in support of the amount of a reduction, notwithstanding the amendment and the Advisory Committee Note.  I read the Rule as if the Advisory Committee, in excising all reference to the Commission, had reinserted Congress' original requirement that the reduction "reflect" the "subsequent, substantial assistance."[30]  Because the Commission has never written a policy statement for Rule 35(b) motions, it is premature to resolve finally the authority of the rulemaking process to eliminate the role that Congress assigned the Commission.  It will be time enough to decide that issue when the Commission explicitly promulgates a Rule 35(b) policy statement.  In the meantime, interpreting the text to limit reductions to factors that "reflect" substantial assistance maintains the substantive standard chosen by Congress and thus does not run afoul of the Rules Enabling Act.

### C.  In Summary

In § 3582, Congress distinguished imposition of a sentence from modification of a previously imposed sentence.  Compare 18 U.S.C. § 3582(a) with

---

[30] As before, the § 3553(a) factors can be used in declining to reduce or in lessening the reduction that assistance would otherwise support.  Garcia, 215 Fed. App'x. at 950-51 (citing Manella, 86 F.3d at 204-05); Doe, 351 F.3d 929; United States v. Neary, 183 F.3d 1196 (10th Cir. 1999).  I suppose this limitation on the use of § 3553(a) is also a possible (but unlikely) reading of the new Advisory Committee Note.  (Interestingly, Congress explicitly directed consideration of the § 3553(a) sentencing factors in § 3582(a) dealing with imposition of sentence and in § 3582(c) for the other two reduction categories.  But nowhere did Congress require consideration of the § 3553(a) factors for a Rule 35(b) motion.  Nevertheless, the caselaw has permitted it.)

18 U.S.C. § 3582(c).  For modification of a previously imposed sentence under subsection (c), the legality of the original sentence is assumed and is not under attack.  All modifications under subsection (c) come as the result of a dispensation by other authorities:

> under subsection (1)(A), Bureau of Prisons motions to reduce sentences, usually involving prisoner age and/or illness, 18 U.S.C. § 3582(c)(1)(A);

> under subsection (1)(B), prosecutor motions to reduce sentences under Rule 35(b)[31] for substantial assistance, 18 U.S.C. § 3582(c)(1)(B); and

> under subsection (2), as a result of post-sentencing Guidelines amendments by the Commission, 18 U.S.C. § 3582(c)(2).[32]

In each instance, Congress assigned the Commission the task of guiding the reduction.[33]  The Commission never promulgated a policy statement for Rule 35(b).  But the § 5K1.1 policy statement guides by analogy, and some of the early caselaw drew equivalent guidance from the congressional requirement that the reduction "reflect" the substantial assistance.  Therefore, notwithstanding the deletion of all reference to the Commission and to the "reflect" requirement, I follow the earlier caselaw and limit any reduction to that justified only by substantial assistance.  The Sixth Amendment right to jury trial is not implicated in such a reduction.

---

[31] Or express statutory provisions, see supra n.7.

[32] Under this provision, a defendant may move for the reduction—as may the Director of the Bureau of Prisons or the court itself—but only after the Sentencing Commission has amended the Guidelines.

[33] Section 3582(c) requires that the Bureau of Prisons and post-sentence Guidelines amendment reductions be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A), (c)(2).  Congress wrote the equivalent language into Rule 35(b).

### D.  Application to this Defendant

Operating under the restrictions of the caselaw interpreting old Rule 35(b) and, by analogy, the factors listed in § 5K1.1, I consider the following in determining how far to reduce this defendant's sentence:

1.    His assistance was significant and useful.  The government could not successfully prosecute the other responsible person, his cousin, without this defendant's assistance; his proffer was not merely helpful, it was essential; only this defendant's assistance could generate a conviction.

2.    The defendant's information was entirely truthful, complete and reliable once he decided to provide assistance under Rule 35(b).

3.    The nature and extent of the assistance was unusual:

   a.    This twenty-one-year-old had to turn in his father's brother's son, a very difficult decision because of the strong family relationships.  He could not bring himself to do so initially because of family pressure.  Only increasing age and maturity led him to the decision.  It has, in fact, created a severe family rift.  He had to shoulder responsibility for the relations of an older generation and an entire family.

   b.    He also agreed to withdraw his appeal (of the suppression ruling; of his conviction; and of the sentence).

4.    There was danger or risk of injury.  For a young man to cooperate while in prison generates expectable risks.

5.    His assistance was timely for Rule 35(b) cooperation.  I do not consider the fact that it was late for § 5K1.1 purposes.  The purpose of Rule 35(b) is to give credit for substantial assistance that occurs only after sentencing.  Therefore, the fact that it is after sentencing cannot make it "late."

Considering only those substantial assistance-related factors, I **REDUCE** the defendant's sentence to forty (40) months.  The § 3553(a) factors that can be used

to limit a reduction call for significant prison time (offense seriousness, general deterrence, respect for the law, the Guidelines range). In the absence of authority to consider § 3553(a) factors that could increase the reduction, those factors (and the defendant's failure to accept responsibility initially and his lie at the suppression hearing) lead me not to reduce the sentence farther than forty months.[34]

If my analysis of the new Rule 35(b) is incorrect, and if I am able to consider § 3553(a) factors generally on this motion,[35] I would take into account the following ameliorating factors:

1.   The defendant's cousin, who was just as culpable, indeed slightly more so (I base that conclusion on the transcript of this defendant's trial and the prosecutor's statement at the Rule 35 hearing), was prosecuted only as a juvenile, not as an adult, although the prosecution agrees that he could have been prosecuted as an adult. As a result, the cousin, unlike the defendant, is not a convicted federal felon and received a drastically lesser penalty. See § 3553(a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). But at the same time I recognize that because of the Guidelines range, many defendants like this defendant have been and will be sentenced much higher, more like the sentence I imposed initially. Thus, the disparity factor would lead to some further reduction, but not enough to make his sentence comparable to that of his cousin.[36]

---

[34] Even under the post-Sentencing Reform Act version of the rule, "the essence of a Rule 35(b) determination-the district court's discretionary decision whether to reduce a defendant's sentence, and if so, to what extent-remains intact." McAndrews, 12 F.3d at 279 n.9.

[35] I did consider § 3553(a) factors at sentencing, but then the 5-year mandatory minimum limited their effect in any ameliorating way.

[36] The caselaw is in some disarray on this factor. See United States v. Cirilo-Munoz, 504 F.3d 106, 127 (1st Cir. 2007) (per curiam) (no majority opinion but two judges agreeing that a sentence is not *(continued on next page)*

24

2. This crime involved the destruction of property, and restitution is due. Because of the five-year statutory minimum, I was unable to consider this sentencing factor, <u>see</u> § 3553(a)(7), in any meaningful way at the original sentence. But clearly, this young man, who is very employable, can begin to pay restitution sooner if he leaves prison sooner. That is a sentencing goal under § 3553(a)(7).

3. Protecting the public, <u>see</u> § 3553(a)(2)(c), and just punishment, <u>see</u> § 3553(a)(2)(A), do not require a longer sentence here. This young man is highly unlikely ever to be involved in such activity again. It was criminal, it was dangerous (particularly so because of the soda machine's proximity to petroleum and propane products), and it could have resulted in serious injury or death, but it was also adolescent conduct. <u>See</u> § 3553(a)(1) ("nature and circumstances of the offense and the history and characteristics of the defendant").

If I were able to consider these additional § 3553(a) factors, I would reduce the defendant's sentence to thirty months.

---

"unreasonable merely because it is disproportionate to the sentence imposed on [a] co-defendant"); <u>United States v. Vazques-Rivera</u>, 470 F.3d 443, 449 (1st Cir. 2006) ("[A] district court may consider disparities among co-defendants in determining a sentence."); <u>United States v. Mueffelman</u>, 470 F.3d 33, 40 (1st Cir. 2006) ("[C]entral concern with disparities is between what the defendant was given and what is done nationally with defendants in the same circumstances."); <u>United States v. Saez</u>, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."); <u>United States v. Parker</u>, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); <u>United States v. Wills</u>, 476 F.3d 103, 110 (2d Cir. 2007) (same); <u>United States v. Krutsinger</u>, 449 F.3d 827, 830 (8th Cir. 2006) (under § 3553(a), no abuse of discretion "in fashioning a sentence that attempted to address the disparity in sentences between two nearly identically situated individuals who committed the same crime in the same conspiracy").

### III.  Conclusion

Under the law as I understand it, the government's motion under Rule 35(b)(1) is **Granted**.  The defendant's sentence is reduced to forty (40) months.

**So Ordered.**

**Dated this 4th day of February, 2008**

/s/D. Brock Hornby
_____
**D. Brock Hornby**
**United States District Judge**

***Appendix***

Here is the history behind the adoption of the December 2007 amendment to Rule 35(b).

Following United States v. Booker, 543 U.S. 220 (2005), a subcommittee of the Advisory Committee on Criminal Rules ("the Booker Subcommittee") reviewed the Federal Rules of Criminal procedure to determine what rules required revision in light of Booker. It recommended changes to a handful of rules, including Fed. R. Crim. P. 35(b). The subcommittee concluded that subparagraph (b)(1)(B) ("reducing the sentence accords with the Sentencing Commission's Guidelines and policy statements") was "inconsistent with Booker's holding that the Guidelines cannot be mandatory." Mem. from Booker Subcommittee to Advisory Committee on Criminal Rules, 4 (Mar. 15, 2005) in Agenda Materials of the Advisory Committee on Criminal Rules, April 2005, available at http://www.uscourts.gov/rules/Agenda_Books.htm#criminal. The Booker Subcommittee recommended deleting subparagraph (B) and merging subparagraph (A) into the introductory clause of (b)(1). Id. According to the memorandum recommending the change to Rule 35:

> One member of the subcommittee felt that this change was unnecessary, because there are no guidelines (and thus certainly no mandatory guidelines) at present that govern resentencings in substantial assistance cases. Other committee members felt that the text of the rules should not appear to give guidelines mandatory effect, and noted that future guidelines might govern resentencing.

Id.[1]

At its April 2005 meeting, the full Advisory Committee approved the amendment and voted to publish it for comment. Advisory Committee on Criminal Rules, Minutes, 6 (Apr. 4-5, 2005), available at http://www.uscourts.gov/rules/minutes.htm. In its subsequent recommendation to the Standing Committee on Rules of Practice and Procedure that the amendment be published for public comment, the Advisory Committee explained the proposed amendment:

> This amendment conforms Rule 35(b)(1)(B) to the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), holding that the guidelines are advisory, rather than mandatory. The rule currently states that the court may reduce a sentence if "reducing the sentence accords with the Sentencing Commission's guidelines and policy statements." Although the guidelines do not currently include provisions governing the correction of sentences under Rule 35, the amendment removes the rule's language that seems, on its face, to be inconsistent with the ruling in *Booker*.

---

[1] In the same memorandum, the Booker Subcommittee recommended no change to Rule 35(b)(2) (substantial assistance reductions after one year has passed) because "this provision seems unobjectionable, since this is a reduction after the defendant has been sentenced." Mem. from Booker Subcommittee to Advisory Committee on Criminal Rules, 6 (Mar. 15, 2005) in Agenda Materials of the Advisory Committee on Criminal Rules, April 2005, available at http://www.uscourts.gov/rules/Agenda_Books.htm#criminal.

Mem. from Advisory Committee on Criminal Rules to Standing Committee on Rules of Practice and Procedure, 5 (May 17, 2005) in Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure: Request for Comment (August 2005), available at http://www.uscourts.gov/rules/proposed0206.htm.

In August 2005, the Standing Committee published for comment the proposed amendment to Rule 35, among others. See Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure: Request for Comment, 146 (August 2005), available at http://www.uscourts.gov/rules/proposed0206.htm. The Committee Note accompanying the proposed amendment stated:

> The amendment conforms Rule 35(b)(1) to the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). In Booker, the Court held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) (Supp.2004), violates the Sixth Amendment right to jury trial and the Fifth Amendment requirement of proof beyond a reasonable doubt. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004)." Id. at 757. Subsection (b)(1)(B) has been deleted because it treats the guidelines as mandatory.

Id. at 147.

The United States Sentencing Commission submitted comments on the proposed amendment. It asserted that § 5K1.1 "sets forth a list of factors that the sentencing court should consider before granting a Rule 35(b) motion."[2] It also questioned whether Booker applied at all in the post-sentencing context: "Because the Rule 35(b) determination involves no judicial finding of fact that would increase the sentence, it would not appear that a defendant's Sixth Amendment rights are jeopardized by, or that Booker requires modification of, the mandatory nature of the current rule." The Commission warned that removing the reference to Sentencing Commission Guidelines and policy statements in Rule 35(b) "may result in consideration of factors other than the value of the defendant's substantial assistance or post-sentence cooperation." Noting "that Booker's remedial opinion requires court consideration of applicable Commission policy statements[,]" the Commission requested that "amended Rule 35(b) . . . reflect the continued

---

[2] I emphasize the "should." The comment came from the Commission's Staff Director. She did not actually state that § 5K1.1 was the policy statement that Congress directed the Commission to adopt for Rule 35(b) in § 994(a)(2)(C). I have explained in note 13 supra why § 5K1.1 cannot be considered the controlling policy statement.

requirement that courts consult and consider the guidelines and policy statements before making any such sentence reduction." The Commission also recommended that the Committee Note accompanying the amendment "clarify that the changes are not intended to enlarge the bases of what a court may consider before imposing a post-sentence reduction." Letter from Judith W. Sheon, Staff Director, United States Sentencing Commission, to Committee on Rules of Practice and Procedure (Feb. 15, 2006), available at http://www.uscourts.gov/rules/CR%20Rules%202005.htm.[3]

Responding to the Sentencing Commission's suggestion that Booker might not apply in the post-sentencing context, the Reporter to the Advisory Committee "recommended against adopting the changes to the Rule 35 amendment suggested by the Sentencing Commission." Advisory Committee on Criminal Rules, Minutes, 6 (April 3-4, 2006), available at http://www.uscourts.gov/rules/minutes.htm. She did, however, propose the following addition to the Committee Note: "The amendment is not intended to alter the factors a court may consider before imposing a post-sentence reduction." The Reporter explained that the additional language was intended "only to indicate that by amending the rule the Committee [took] no position on the scope of the court's authority to reduce a sentence under Rule 35." Mem. from Professor Sara Sun Beale, Reporter, to Members, Criminal Rules Advisory Committee (March 11, 2006) in Agenda Materials of the Advisory Committee on Criminal Rules, April 2006, available at http://www.uscourts.gov/rules/Agenda_Books.htm#criminal. The Committee, however, made no changes to the proposed Rule 35 amendment and approved it, as published, without objection. Advisory Committee on Criminal Rules, Minutes, 6 (April 3-4, 2006), available at http://www.uscourts.gov/rules/minutes.htm.

In a subsequent memorandum to the Standing Committee on Rules of Practice and Procedure recommending that the Standing Committee approve the proposed amendment and forward it to the Judicial Conference, the Chair of the Advisory Committee stated:

---

[3] The Committee received two other comments. The National Association of Criminal Defense Lawyers (NACDL) embraced the Advisory Committee's conclusion that Rule 35(b)'s reference to the Guidelines must be removed because the Guidelines were no longer mandatory. NACDL asserted that sentencing judges must now comply with 18 U.S.C. § 3553(a) rather than the Guidelines and reduce a sentence, if at all, "to the extent that it will become or remain 'sufficient, but not greater than necessary' to achieve the purposes of the criminal justice system." Letter from William J. Genego and Peter Goldberger, Co-Chairs, National Association of Criminal Defense Lawyers Committee on Rules of Procedure, to Peter G. McCabe, Secretary, Standing Committee on Rules of Practice and Procedure, 6-7 (Feb. 15, 2006), available at http://www.uscourts.gov/rules/CR%20Rules%202005.htm. NACDL also advocated deleting the requirement that the government must file a motion before a sentence reduction is permitted. Finally, a comment on behalf of the Federal Public and Community Defenders pointed out that, contrary to the proposed Advisory Committee Note, Booker's holding did not address the Fifth Amendment standard of proof requirement, but was grounded in the Sixth Amendment only. See Testimony of Jon Sands, Chair, Federal Defender Sentencing Guidelines Committee, before the Advisory Committee on Federal Rules of Criminal Procedure, Jan. 6, 2006.

This amendment conforms Rule 35(b)(1)(B) to the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), holding that the Guidelines are advisory, rather than mandatory. The rule currently states that the court may reduce a sentence if "reducing the sentence accords with the Sentencing Commission's guidelines and policy statements." Although the Guidelines do not currently include provisions governing the correction of sentences under Rule 35, the amendment removes the rule's language that seems, on its face, to be inconsistent with the decision in *Booker*.

Both the Sentencing Commission and the National Association of Criminal Defense Lawyers (NACDL) suggested changes in either the amendment or the note. After discussion, the Committee decided not to alter the amendment. In essence, the proposed changes introduced additional issues that were not part of the amendment as published. NACDL suggested that given the advisory character of the Guidelines, it is no longer appropriate for the rule to require that the motion be made by the government, since powerful evidence of cooperation should be considered under 18 U.S.C. § 3553(a) even in the absence of such a motion. The language of the rule, however, was enacted by Congress. Even if the Committee had the authority to delete this requirement under the Rules Enabling Act, it could not do so without publishing such an amendment for public comment. The Sentencing Commission raised the question whether the *Booker* remedial opinion is applicable to the post-sentencing context. It suggested that the Committee Note be amended to address this issue. The Committee unanimously declined to introduce the new language to the Note, or otherwise to alter the rule as published for public comment. (The only exception was the agreement to eliminate the reference to the Fifth Amendment in the description of the <u>Booker</u> decision in this Note, as well as the notes accompanying the other amendments.)

<u>See</u> Mem. from Chair, Advisory Committee on Federal Rules of Criminal Procedure, to Chair, Standing Committee on Rules of Practice and Procedure, 4-5 (May 20, 2005, revised July 20, 2006), <u>excerpt available at</u> <u>http://www.uscourts.gov/rules/supct1106.htm</u>.

The Standing Committee approved the amendment, without objection, and sent it to the Judicial Conference for final approval. Committee on Rules of Practice and Procedure, Minutes, 27 (June 22-23, 2006), <u>available at</u> <u>http://www.uscourts.gov/rules/minutes.htm</u>. The Judicial Conference approved the amendment at its September 19, 2006 meeting and transmitted it to the Supreme Court, along with several other proposed amendments to the Federal Rules. Report of the Proceedings of the Judicial Conference of the United States, 35 (September 19, 2006), <u>excerpt available at</u> <u>http://www.uscourts.gov/rules/supct1106.htm</u>. The accompanying discussion of Rule 35 was brief:

The proposed amendment to Rule 35 removes the restriction that the court may reduce the sentence of a cooperating defendant only if the reduced sentence accords with the Sentencing Guidelines and the Sentencing Commission's policy statements. The restriction is stricken as inconsistent with <u>Booker</u> because it treats the guidelines as mandatory.

iv

Mem. from Chair, Committee on Rules of Practice and Procedure, to Chief Justice of the United States, 6 (November 1, 2006), underline available at  http://www.uscourts.gov/rules/congress0407.htm.   The United States Supreme Court approved the proposed amendment to Rule 35(b) and submitted it to Congress on April 30, 2007.  Transmittal Letters to Congress and Supreme Court orders (April 30, 2006), underline available at  http://www.uscourts.gov/rules/congress0407.htm.  Congress took no action, and as a result, the Rule went into effect December 1, 2007.